Nora **HARRISON**, Plaintiff,

v.

**NEW YORK CITY OFF–TRACK BETTING CORP. and Allen Gutterman, Defendants.**

**No. 99 CIV. 6075(VM).**

United States District Court, S.D. New York.

Aug. 4, 2000.

Marshall B. Bellovin, Ballon, Stoll, Bader & Nadler, New York City, for Plaintiff.

Elizabeth Anne Galani, Michael D. Hess, Corporation Counsel of City of New York, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Nora Harrison ("Harrison") brings suit pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), after filing a timely charge of discrimination with the Equal Employment Opportunity Commission and receiving a Notice of Right to Sue. The complaint alleges age discrimination by defendants, New York City Off-Track Betting Corporation ("OTB") and Allen Gutterman, Senior Vice President of marketing at OTB ("Gutterman"), and seeks recovery for, among other things, lost wages, pension benefits, emotional distress and loss of enjoyment of life. Compl. ¶ 30. The complaint sets forth three causes of action against each defendant under the following provisions: (1) 29 U.S.C. § 623(a)(1); (2) New York State Executive Law § 296(1)(a); and (3) New York City Administrative Code § 8-107(1)(a).

OTB and Gutterman have moved for a partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure asserting that (a) Harrison's State and City human rights claims are barred under the election of remedies provision of New York State Executive Law § 297(9) and New York City Administrative Code § 8–502(a) and (b) the complaint fails to state a claim against Gutterman. They also seeks a stay of discovery, including adjourning Gutterman's deposition until the motion has been decided.

### FACTS

Harrison is a 70 year old female. Compl. ¶ 3. Since April 19, 1973, she has been employed by OTB. See Plaintiff's Memorandum of Law in Opposition to Motion, dated Mar. 23, 2000 ("Plaintiff's Memo"), at 2. She currently holds the title of Chief Clerk, a position she obtained in March of 1975. See id. Harrison alleges that she has been forced into inactivity by Gutterman, her supervisor. Compl. ¶ 18. She asserts that beginning from on or about February 24, 1997 to in or about April or May, 1999, she was not given any specific job to perform despite repeated requests. Compl. ¶ 14.

Harrison further contends she was refused the opportunity to work overtime and was assigned "menial jobs, beneath her position as Chief Clerk." Compl. ¶¶ 15, 16. In addition, Harrison alleges that work which should have been assigned to her was divided between two women who were thirty-two and thirty years old. Compl. ¶ 17. Harrison further alleges that on or about July 31, 1997, Gutterman told her that she should consider retiring because she "wasn't making a contribution to the company." Compl. ¶ 18.

In August, 1997, Harrison also filed a complaint with the State Division of Human Rights (the "Division") based on the preceding allegations. See Declaration of Elizabeth Galani, sworn to Feb. 24, 2000, Ex. A. By order dated March 30, 1999, the

Division made a finding of "NO PROBA-BLE CAUSE." *See id.*

## DISCUSSION

### A. *Election of Remedies*

OTB asserts that this Court lacks subject matter jurisdiction over Harrison's State and City human rights law claims because Harrison's election of an administrative remedy became irrevocable once her claim was heard by an examiner from the Division. The current version of Executive Law § 297(9), which became effective August 5, 1997, authorizes the filing of a cause of action in court by any person claiming to be aggrieved by an unlawful discriminatory practice. *See* N.Y. Exec. Law § 297 (McKinney 1993 & Supp.2000). However, this right is waived if the claimant files a complaint with any local commission on human rights, unless (1) the agency has dismissed the complaint for administrative convenience; (2)there is untimeliness on the part of the agency; or (3) the claimant's election of an administrative remedy is annulled. *See id.* Under these three exceptions, a complainant maintains all rights to bring suit as if no complaint had been filed with the Division. *See id.*

The statutory procedure for annulment of an election of remedies is as follows:

> At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the division may request that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court, and the division may, upon such request, dismiss the complaint on the grounds that such person's election of an administrative remedy is annulled.

*Id.* Prior to August 5, 1997, the provisions allowing the filing of direct discrimination actions in court either upon annulment of an election of administrative remedy by claimant or upon agency untimeliness, did not exist, making administrative convenience the only method for voiding a claimant's choice of an administrative remedy. *See id.*

In Harrison's opposition to the instant motion, she asserts that because she filed her verified complaint for an administrative remedy on August 5, 1997, she was given no opportunity to properly elect her remedy and was relegated to the singular "arcane exception" of administrative convenience. *See* Plaintiff's Memo at 3. Harrison further asserts that she had no knowledge of the change in law and therefore alleges that she gave up her rights to sue in court by filing with the Division. *See* Plaintiff Nora Harrison's Affidavit in Opposition, dated Mar. 23, 2000, ¶ 10.

Harrison's arguments reflect a misunderstanding of Executive Law § 297(9). The 1997 provision at issue here served to broaden a complainant's remedies, not to narrow them. Under the enhanced protections the law now provides, a plaintiff could annul an administrative complaint filed at the Division and bring an action in court as long as the merits of the complaint had not been adjudicated. Since Harrison filed her complaint with the Division on August 5, 1997, and a final determination on it was not rendered until March 30, 1999, she had over 19 months to discover the annulment provision and change her course of action.

■ OTB is correct to point out that any claim of ignorance advanced by Harrison or her attorney does not free her from the application of the law, or remove the bar to bringing the relevant claims in this Court. *See* Defendants' Reply Memorandum of Law in Further Support of Motion for Partial Judgment on the Pleadings, dated Apr. 14, 2000 ("Defendants' Reply Memo"), at 3. As the well known adage states, ignorance of the law is not an excuse. *See United States v. Gregg,* 612 F.2d 43, 51 (2d Cir.1979). In a situation where Harrison had a 19 month opening in which she or her attorney could have learned of the change in the statute, this maxim is particularly appropriate. Thus,

this Court dismisses Harrison's claims under the State and City human rights laws for lack of subject matter jurisdiction.

## B. *Gutterman's Liability*

The second portion of defendants' motion asserts that Gutterman cannot be held individually liable and that the charges against him personally should be dropped for failure to state a claim. Harrison responds by arguing that Gutterman had supervisory authority over her and therefore falls within the class of employees who are subject to individual liability. *See* Plaintiff's Memo at 5.

The liability of defendants in this action is governed by the ADEA, which specifically incorporates the powers, remedies, and procedures of Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 42 U.S.C. § 12117. *See also Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997) (claims brought under the ADEA follow the same approach taken for Title VII claims). According to *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), a seminal case on the issue of employee liability, "individual defendants with supervisory control over a plaintiff may not be personally held under Title VII." *See also Gierlinger v. Gleason,* 160 F.3d 858, 867 (2d Cir.1998) (supporting the holding in *Tomka,* by dismissing a Title VII claim of individual liability against claimant's supervisor); *accord Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 689 (2d Cir.1998).

Title VII defines "employer" as any person who, engaged in an industry affecting commerce, has at least fifteen employees, and any agent of such a person. *See Tomka,* 66 F.3d at 1313 (citing 42 U.S.C. § 2000e(b)(1994)). The controversy over this definition surrounds the term "agent" which, according to Harrison, encompasses an individual in Gutterman's position. *See* Plaintiff's Memo at 4. Harrison asserts that Gutterman's status as a supervisory employee, along with his ability to hire and fire her, renders him an agent who is individually liable. *See id.*

The analysis in *Tomka,* however, suggests otherwise. The *Tomka* court, 66 F.3d at 1313, asserted that while on its face 42 U.S.C. § 2000e(b) appears to allow for individual liability, the result from such a concrete interpretation would be at odds with true Congressional intent. The legislative history indicates that an important goal behind 42 U.S.C. § 2000e(b) was to limit liability in discrimination suits involving small companies or entities that could not absorb the cost of litigation. *See id.* at 1314. Thus, the Second Circuit reasoned that it would be difficult to reconcile why a Congress concerned with protecting small employers would then allow an individual employee, who may be even more ill-suited to defend lawsuits, to be sued in his personal capacity. *See id.*

Harrison cites three cases from the Northern District of New York in support of the proposition that individual liability for discrimination exists against defendants who serve in supervisory roles. *See* Plaintiff's Memo at 5. However, as OTB notes, these cases have all been undermined by *Tomka* and subsequent case law. *See Walsh v. City of Auburn,* 942 F.Supp. 788, 797 n. 5 (N.D.N.Y.1996) (stating, "After *Tomka, Austin, Wanamaker,* and *Bostick* are no longer authoritative."); Defendants' Reply Memo at 4. The *Tomka* court addressed and rejected the very issue of supervisory employees that Harrison argues should be an exception to the bar on individual liability:

> While it might be argued that a supervisory employee with the power to hire, fire or discipline a plaintiff should be treated as an "employer" ... this interpretation would require a court to differentiate between supervisors with the power to hire and fire from supervisors without these powers. Because Title VII speaks only of "agents," there is no basis in the statute for this distinction.

*Tomka,* 66 F.3d at 1314–15.

Therefore, in order to find individual liability here, Harrison must rely on any

State and City human rights laws violated by Gutterman. *See Naftchi v. New York Univ.*, 14 F.Supp.2d 473, 492 n. 150 (S.D.N.Y.1998). While Harrison alleges that these exist (*see* Plaintiff's Memo at 4), this issue has been resolved here, as such claims by Harrison are now barred by application of the election of remedies provision to her complaint.[1] *See* discussion, *supra.* Accordingly, the Court dismisses all of Harrison's claims against Gutterman.

## ORDER

For the reasons set forth in the foregoing Decision, it is hereby

**ORDERED** that defendants' motion for partial judgment on the pleadings is granted in its entirety;[2] and it is further

**ORDERED** that dismissal as to Gutterman is conditioned on his appearance at a deposition in this matter on or before August 25, 2000; and it is finally

**ORDERED** that the parties are directed to appear for a conference with the Court on August 10, 2000 at 4:00 p.m. **SO ORDERED.**

---

1. For this same reason, the Court declines to address whether defendant Gutterman is "individually liable as an aider and abettor under Executive Law § 296(6)." Compl. ¶ 9.

2. The Court deems moot that portion of defendants' motion regarding a stay of discovery and does not address it.